# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

DR. SAMIRA ASGARI,

    *Plaintiff,*

v.

DONALD TRUMP, President of the United States, JOHN KELLY, Secretary of the Department of Homeland Security; KEVIN K. MCALEENAN, Acting Commissioner of the Customs and Border Patrol Division of DHS; and WILLIAM MOHALLEY, Boston Field Director of the CBP,

    *Defendants.*

Case No. 17-10182

Date: February 1, 2017

## COMPLAINT

### Introduction

1. This is "an appropriate action," pursuant to Fed. R. Civ. P. 81(b), to compel officers of the United States and the agencies thereof to perform a duty imposed upon them by the Court, and owed to the Plaintiff pursuant to 28 U.S.C. § 1361.

### Parties

2. Plaintiff Dr. Samira Asgari is an Iranian national who currently resides in Lausanne, Switzerland.

3. Defendant Donald Trump is the President of the United States. He is sued in his official capacity.

4. Defendant John Kelly is the Secretary of the United States Department of Homeland Security ("DHS"), the cabinet department of the United States government responsible for the enforcement of immigration laws. Secretary Kelly is responsible for the

administration of immigration laws at the border and in the interior. He is sued in his official capacity.

5. Defendant Kevin K. McAleenan is the Acting Commissioner of the U.S. Customs and Border Protection ("CBP"), the division of DHS responsible for the protection of the United States border, including the admission of travelers at airports and other ports of entry. Acting Commissioner McAleenan is responsible for the administration of immigration laws at the border, including the admission of travelers to the United States. He is sued in his official capacity.

6. Defendant William Mohalley is the Director of the Boston Field Office of CBP. He is sued in his official capacity.

## Jurisdiction

7. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1361.

8. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## Facts

9. As set out in Exhibit 1 attached hereto, Plaintiff, an Iranian citizen, holds a doctorate degree from the École Polytechnique Fédérale de Lausanne in Switzerland, and is an expert in genomics, infectious diseases, and computational biology. Dr. Asgari's research focuses on state-of-the-art sequencing technologies for finding the variants that confer susceptibility to infections, and in particular, pediatric infections. Her work focuses on the role of human genomic variations on susceptibility to infections and the progression of infectious disorders.

10. Dr. Asgari received the Swiss National Science Foundation Early Postdoc Mobility Grant in October of 2016, and was a finalist for the ASHG/Charles J. Epstein Trainee Award for Excellence in Human Genetics Research in October of 2015.

11. Dr. Soumya Raychaudhuri, a scientist and physician at Brigham and Women's Hospital in Boston, runs a world-renowned human genomics laboratory. Dr. Raychaudhuri is renowned for scholarship that elucidates the role of human genetic variation in tuberculosis progression.

12. In 2016, Dr. Raychaudhuri recruited Dr. Asgari to join his laboratory for post-doctoral training on a project with particular focus on tuberculosis progression. Dr. Asgari's work in the laboratory was to further explore the role of human genetic variations, using genomics approaches, as it relates to tuberculosis. It was hoped that this research would further the collective understanding of translational medicine, and lead to the development of safer and more effective drugs for the treatment of tuberculosis.

13. In late November, 2016, after learning that she would have the opportunity to come to Boston to work with Dr. Raychaudhuri, Dr. Asgari applied for a J-1 visa, resigned from her position in a genomics laboratory in Lausanne, Switzerland, and arranged to lease her apartment.

14. On January 25, 2017, Dr. Asgari received confirmation from the United States Embassy in Switzerland that her visa application had been approved.

15. The United States issued a J-1 visa to Dr. Asgari on January 27, 2017 (the "Visa").

16. Dr. Asgari promptly made arrangements to fly to Boston. She booked a ticket for Saturday, January 28, 2017 to fly from Zurich, Switzerland to Boston, via Frankfurt, Germany, aboard Lufthansa Air Lines ("Lufthansa").

17. On January 27, 2017, the President executed an Executive Order ("Executive Order"), that purports generally to bar entry into the United States by nationals of seven Muslim-majority countries. Citing the threat of terrorism committed by foreign nationals, the Executive Order directs a variety of changes to the manner and extent to which non-citizens may seek and obtain entry to the United States. Section 3(c) of the Executive Order states, in part:

> . . . I hereby proclaim that the immigrant and nonimmigrant entry into the United States of aliens from countries referred to in section 217(a)(12) of the INA, 8 U.S.C. 1187(a)(12), would be detrimental to the interests of the United States, and I hereby suspend entry into the United States, as immigrants and nonimmigrants, of such persons for 90 days from the date of this order . . . .

18. Among the countries specified by the Order's reference to 8 U.S.C. § 1187(a)(12) is Iran.

19. On the morning of Saturday, January 28, Dr. Asgari completed the first leg of her travel from Zurich to Frankfurt without incident. However, when she arrived at the Lufthansa gate at the Frankfurt Airport to board a flight from Frankfurt to Boston, she was turned away. A person in front of the Lufthansa gate, who introduced himself as a representative from the consulate of the United States of America, told Dr. Asgari that she was ineligible to board a flight to the United States because of the Executive Order issued hours before.

20. At about the same time, other holders of visas were arriving and being detained at Logan International Airport.

21. Early on January 29, 2017, in the case of *Tootkaboni, et. al v. Trump, et. al*, No. 17-cv-10154, Dkt. No. 6 (D. Mass. Jan. 29, 2017), District Judge Burroughs and Magistrate Judge Dein issued a Temporary Restraining Order that provided immediate protection to, among

others, "holders of valid immigrant and non-immigrant visas . . . who, absent the Executive Order, would be legally authorized to enter the United States." (Burroughs, J., Dein, M.J.) (the "Order"). A copy of the Order is attached to this Complaint as Exhibit 2.

22. As holder of the Visa, a valid J-1 non-immigrant visa, Dr. Asgari is and remains subject to the Order's protection.

23. The Order requires CBP to "notify airlines that have flights arriving at Logan Airport of this Order and the fact that individuals on these flights will not be detained or returned solely on the basis of the Executive Order." *Id.* The Order provided that it would remain in effect for seven days following its issuance. *Id.* It remains in effect today.

24. In reliance on the Order, on Monday, January 30, 2017, Dr. Asgari booked a seat on Swiss International Air Lines ("SWISS") Flight no. LX52, scheduled to depart from Zurich at 5:25 p.m. (local time), and arrive in Boston at approximately 8:00 p.m. on Tuesday, January 31, 2017.

25. On the morning of Tuesday, January 31, 2017, while Dr. Asgari was traveling from Lausanne to Zurich, she received a telephone call from a representative at SWISS who informed her that she would not be permitted to board Flight LX52. Dr. Asgari attempted to explain that the Order had been issued and required that SWISS permit her to board.

26. Arriving at the gate at the Zurich Airport, Dr. Asgari was met by a SWISS customer service representative. The agent told Dr. Asgari that SWISS had been directed by CBP that she should not be permitted to board the flight to Boston. Dr. Asgari had a copy of the Order, which she showed to the agent, but the agent advised that SWISS was obligated to comply with the Directive.

27. The agent had a printed copy of the Directive. Dr. Asgari photographed the Directive with her cellphone and sent the photograph to her counsel.

28. Prior to the departure of Flight LX52, Dr. Asgari's counsel emailed counsel for CBP with an urgent request that CBP contact SWISS and permit her to board. No such communication was given, and the aircraft departed without Dr. Asgari.

29. As set out in Exhibit 3 attached hereto, on information and belief, CBP threatened that if SWISS did not comply with the Directive, the flight might be denied permission to land, and the airline might be subject to fines of up to $50,000.

30. Dr. Asgari remains in Switzerland, unable to commence work at Brigham & Women's Hospital.

## CAUSE OF ACTION

### Count One:

**Relief Compelling Officers of the United States to Perform Duty Owed to the Plaintiff**

31. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

32. The Order has been, at all times from January 29, 2017 through the present, an effective order of the Court which bound the parties to compliance.

33. While the Order may subsequently be extended, modified, or vacated, it was in effect at all relevant times to this Action.

34. The Order imposed upon each Defendant duties to the Court, the Parties and the Plaintiff as alleged above.

35. The Defendants knowingly and intentionally breached their duties to the Court, the Parties and the Plaintiff under the Order.

36. Defendants' intentional breach of the Order was a breach of their duty to all persons protected by the Order.

37. The duties breached by the Defendants were nondiscretionary, plainly defined, and amounted to a positive command.

38. Plaintiff fully exhausted all remedies reasonably available to her, in that the only possible exhaustion method was to urgently request that Defendants comply with the Order, which she did when it became apparent that they were not doing so.

39. The Defendants' knowing and intentional breach of their duty of compliance with the Order proximately caused irreparable harm to the Plaintiff by denying her the opportunity to appear at the Boston port of entry and apply for entry through the presentation of the Visa, subject to the protections of the Order.

40. The Defendants' knowing and intentional breach of their duty of compliance with the Order intruded impermissibly on the authority of the judicial branch.

41. Plaintiff has no adequate remedy at law and has been irreparably harmed by being denied the opportunity to work in collaboration with the researchers identified above.

42. Separation of Powers concerns, and the lack of any adequate remedy at law justify an order compelling the Defendants to perform their duty owned to the Plaintiff pursuant to the Order.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court:

(1) Enter an order compelling the Defendants to perform all those duties to the Plaintiff that were imposed upon them by the Order;

(2) Fashion equitable and declaratory relief that will have the effect of restoring Plaintiff to the position she would have enjoyed had the Defendants fully complied with the Order in a timely fashion, including, without limitation, that the Defendants instruct the relevant airlines to permit Dr. Asgari promptly to travel to the Boston port of entry and there afford her all of the benefits of the Order as it existed on January 31, 2017; and

(3) Grant to Plaintiff such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Sabin Willett
Sabin Willett (BBO No. 542519)
Thane D. Scott (BBO No. 449340)
Julia Frost-Davies (BBO No. 630590)
Noah J. Kaufman (BBO No. 678968)
Nathaniel P. Bruhn (BBO No. 681994)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110-1726
617.951.8000

Dated: February 1, 2017